# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Michael Scheck, | : | Case No. 1:06CV1761 |
| | : | |
| Petitioner | : | Judge Kathleen M. O'Malley |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Julius Wilson, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this *pro se* action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his February 11, 2005 conviction pursuant to a jury trial of one count of rape and one count of kidnapping, upon which he is serving concurrent sentences of five years incarceration on each count.

The facts in petitioner's case were summarized by the state appellate court in pertinent part as follows:

> On July 27, 2004, T.D., a nineteen year-old female, was working at Medina World Cars.   T.D. arrived home from work at approximately 5:00 p.m.  Once home, she returned an earlier phone call from Appellant, a thirty-nine year-old male who was a close friend of her father.  Appellant invited T.D. to stop by his home that evening so that she could drop off an invitation to her impending wedding.   T.D. agreed to come over and arrived at Appellant's Medina County home at approximately 7:30 p.m.  T.D. brought a twelve-pack of beer along with her.  A.J. Samhan, ("Mr. Samhan"), a nineteen year-old male, and a long-time friend of T.D., was

1

present at Appellant's home at the time of her arrival, as were several other men who were performing construction work on the residence.

After T.D. gave Appellant her wedding invitation, the two began drinking and talking in private.  About an hour after T.D.'s arrival, she and Appellant consumed a few lines of cocaine which Appellant supplied.  Appellant then led T.D. to the basement where the two settled on a couch.   Shortly thereafter, Mr. Samhan came downstairs. Appellant asked Mr. Samhan to supply him with some cocaine.  Mr. Samhan eventually agreed and gave Appellant his cocaine which Appellant shared with T.D.  By this time, the parties had consumed several beers.  Appellant then offered T.D. more cocaine if she would remove her pants.  She claims that she declined this offer while Mr. Samhan asserts that she agreed.  T.D. asserts that when she refused his offer, Appellant pushed her onto the couch, digitally violated her and performed oral sex on her, despite her insistence that he stop.  T.D. further contends that Mr. Samhan restrained her by holding her arms back and kissing her while Appellant was violating her.

Sometime after Appellant violated her, T.D. and Mr. Samhan went upstairs to one of Appellant's children's bedrooms.  T.D. recalls waking up in the child's bed with Mr. Samhan but does not recall how she got there.  While in the bed, Mr. Samhan had forcible sex with her.  Appellant again digitally violated her, performed oral sex on her and repeatedly urged Mr. Samhan to "f*** her."  T.D. claims that she again told both men to "stop" and that neither of them complied.

T.D. next recalls waking up at 4:00 a.m. next to Mr. Samhan in the child's bed.  She recalls that the bed had maroon sheets.  She gathered all her clothing, except her underwear which she could not locate, and departed for home.  Once home, T.D. showered and sat on her couch crying.  She stayed in bed all day on July 28, 2004. T.D. was afraid to tell her fiance, with whom she lived, about the assault and thus did not tell him at this time.

T.D. went to work on July 29, 2004. While at work, she recounted the assault to Rebecca Haller, a co-worker.  Ms. Haller testified that T.D. was extremely emotional while telling her about the assault and was shaking and crying "hysterically."  Ms. Haller explained that T.D. told her that she had been raped by "Mike" and "A.J." and that she felt disgusting.  Later that morning, T.D. and her mother

2

went to the Medina County Sheriff's office where she filed a police report.  The Sheriff's office provided T.D. with a recording device for her telephone and instructed her to record any conversations she had with Appellant and/or Mr. Samhan.  The officers instructed T.D. to let the men initiate the phone call.

An officer then took T.D. and her mother to St. Thomas Hospital in Akron where she was examined and interviewed by forensic nurses.  The nurses took numerous photographs of T.D. and recorded her account of the assault.  During the interview, T.D. admitted using alcohol and cocaine on the evening in question and stated that she was also taking Zoloft, an anti-depressant.  She stated that she blacked out and could not remember portions of the evening.  The nurses obtained a urine sample from T.D. which they discarded a few days later at the direction of Detective Kevin Ross of the Medina County Sheriff's Office.

On July 29, 2004, Detective Ross and a few other officers executed a search warrant of Appellant's residence.  Appellant's wife and Mr. Samhan were present but Appellant was not at home when the police arrived.  While the police officers conducted a search of Appellant's residence, Detective Ross interviewed Mr. Samhan.  Although Mr. Samhan claimed that he had consensual intercourse with T.D., he acknowledged that Appellant forcefully performed oral sex on T.D.  He stated that T.D. told Appellant to "stop."  According to Mr. Samhan, he and T.D. had consensual sex three times on the evening of July 27, 2004.  Mr. Samhan corroborated T.D.'s assertion that Appellant was urging him to "f*** her" while Mr. Samhan and T.D. were in the child's bedroom.

In the officers' search they located three condom wrappers and T.D.'s underwear, which had been stuffed into the pocket of Mr. Samhan's jeans.  They also discovered the maroon sheets T.D. mentioned along with a dish towel that had been contaminated with semen.  The sheets and dish towel had been washed and dried.  When Appellant arrived home, the officers interviewed him.

Mr. Samhan called T.D. on July 30, 2004.  T.D. recorded the conversation.  She then called Appellant but disconnected once she remembered that the police had instructed her to let Appellant place the call. Shortly thereafter, Appellant returned the call and the conversation was recorded. In the conversation, Appellant admitted that he "touched" T.D. but denied committing rape and claimed to have made a videotape that disproved her account of the events.

3

Appellant threatened to show the videotape to T.D.'s father. Throughout this conversation T.D. maintained that she had told Appellant to stop assaulting her.  Appellant later admitted that he had lied about the videotape as there was no such tape in existence.

On April 15, 2005 petitioner, acting through new counsel, appealed his convictions to the

Ohio Ninth District Court of Appeals, alleging six assignments of error:

    I.    The court committed reversible error when it prevented defense counsel from cross-examining the victim regarding prior sexual activity with the co-defendant.

    II.    The State of Ohio committed prosecutorial misconduct when it authorized the destruction of evidence prior to trial which was crucial to the defense case.

    III.    The evidence presented against the defendant-appellant at trial was legally insufficient to sustain a conviction.

    IV.    The conviction of the defendant-appellant was against the manifest weight of the evidence.

    V.    The trial court committed reversible error by not granting the defense motion for new trial.

    VI.    It was prosecutorial misconduct and reversible error for the prosecution to refer to the appellant-defendant as a "rapist" during the trial.

On February 15, 2006 the appellate court affirmed the judgment of conviction and sentence.

On March 13, 2006 petitioner appealed the appellate court ruling to the Ohio Supreme

Court alleging the following two propositions of law:

**Proposition of Law No. I:** When an appellate court adjudicates a claim related to the destruction of evidence and fails to consider the entire record to determine the resulting harm, an appellant is denied due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I Section 10 of the Ohio Constitution.

**Proposition of Law No. II:** When appellate counsel fails to raise

4

appellant's most significant and obvious issue on direct appeal, appellant is denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> A) Counsel's failure to raise sentencing issues on appeal;
>
> B) Appellate counsel's failure to raise trial counsel's failure to investigate;
>
> C) Appellate counsel's failure to raise trial counsel's failure to object:
>
> > 1) Testifying to facts not in evidence;
> >
> > 2) Misrepresenting facts in evidence.

On May 24, 2006 the court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Petitioner did not appeal this decision to the United States Supreme Court.

On July 17, 2006 the petitioner filed the instant *pro se* petition, in which he raises the following two claims for relief:

> **A.  GROUND ONE:** Petitioner was denied the effective assistance of counsel when counsel failed to raise his most significant and obvious issues on direct appeal in violation of the Sixth and Fourteenth Amendments to the United States Constitution.
>
> I)  Counsel's failure to raise sentencing issues on appeal;
>
> II)  Appellate counsel's failure to raise trial counsel's failure to investigate;
>
> III)  Appellate counsel's failure to raise trial counsel's failure to object;
>
> > A)  [The prosecutor testified] to facts not in evidence and misrepresenting facts in evidence.

5

     i)   The complaining witness said no,

     ii)  The complaining witness consistently told the truth,

     iii) Additional inconsistencies between the complaining witness and the co-defendant,

        a) Phone calls,

        b) From the basement to the bedroom.

**B.**  **GROUND TWO:** Petitioner was denied a fair trial, and due process of law when the state, acting in bad faith, ordered the destruction of potentially exculpatory evidence.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date.  Lindh v. Murphy, 521 U.S. 320 (1997).[1]

The respondent argues that two of petitioner's sub-claims are subject to dismissal as procedurally defaulted.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights.  Granberry v. Greer, 481 U.S. 129, 133 (1987).  Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court.  Baldwin v. Reese, 541 U.S. 27 (2004);  Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995).  In so doing, state courts are afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

---

[1]There are no issues of untimeliness in this case.

appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326 (6th Cir. 1987), cert. denied, 532 U.S. 958 (2001).  Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004).  It is not enough to present the facts giving rise to the federal claim raised in habeas corpus;  a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).  Even if a claim is related, but distinct, the claim is nonetheless defaulted.  Lott v.  Coyle, 261 F.3d 594, 607, 619 (6th Cir.  2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise the state court of a specific federal constitutional guarantee so as to exhaust the claim.  Gray v. Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and Anderson v. Harless, 459 U.S. 4, 7 (1982).  For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim.  Baldwin v. Reese, supra.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and would be barred from pursuing relief on that claim in the state courts, the petition should not be dismissed for failure of exhaustion in light of the fact that there would be

no available state remedies to exhaust.  Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6ᵗʰ Cir. 1994).[2]  A petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to petitioner's defense at trial or on appeal for the claim to be considered in federal habeas corpus.  Gray v. Netherland, supra at 162;  Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money, 391 F.3d 84, 808 (6ᵗʰ Cir. 2004).

First, the respondent asserts that Ground One, sub-claim II, in which petitioner argues that his appeal counsel was constitutionally ineffective for failing to claim that trial counsel was ineffective for failing to take measures to ensure that test results of a urine sample were valid prior to the destruction of that sample, is a different theory than that presented to the state supreme court, which was that his appeal counsel was constitutionally ineffective for claiming that trial counsel was constitutionally ineffective for failing to investigate whether the victim was under the influence of substances other than alcohol or cocaine at the time of the offenses committed against her.

Petitioner having failed to present the same legal theory to the state courts as is presented in this sub-claim it has not been preserved for purposes of review in habeas corpus.  There has been no showing of evidence of cause for such default or prejudice arising therefrom.  As a consequence, Ground One, sub-claim II should be dismissed, and not be considered in these proceedings.

Respondent also argues that Ground One, sub-claim III(A)(iii), in which petitioner argues that his appellate counsel was constitutionally ineffective for failing to assert that trial counsel had

---

[2]Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief.  See, Collins v. Perini, 594 F.2d 592, 593 (6ᵗʰ Cir. 1978).

been ineffective for failing to object to the prosecuting attorney's having "testified" to "acts not in evidence and misrepresenting facts in evidence" as pertained to "[A]dditional inconsistencies between the complaining witness and the co-defendant" concerning telephone calls and movement of the victim from the basement to the bedroom, is subject to dismissal as procedurally defaulted in light of the fact that this claim was not presented to the state courts and there has been no showing of cause or prejudice for such procedural default.

This Court agrees that this particular theory was not presented to the state supreme court, and that there has been no persuasive showing of cause and prejudice for the default. As a consequence, Ground One, sub-claim III(A)(iii) is also subject to dismissal.

Turning to merits review, the role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). A state court adjudication is deemed as being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme]

9

Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." A state court adjudication is deemed as involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court...as of the time of the relevant state-court decision;"  "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply."  120 S.Ct. at 1519-1520.   In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Circuit Court of Appeals has interpreted the foregoing as holding that even if a federal habeas corpus court determines that a state court incorrectly applied federal law it may not grant relief in habeas corpus unless it finds that the state court ruling was also unreasonable. Simpson v. Jones, 238 F.3d 399, 405 (6th Cir.  2000), citing Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 121 S.Ct. 808 (2001).

In his first claim for relief petitioner alleges that he was denied the effective assistance of appellate counsel by reason of counsel's failure to raise certain issues on direct appeal.

A petitioner claiming ineffective assistance of counsel must demonstrate that counsel's conduct was so far below acceptable standards of representation that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the trial unfair.  Strickland v.

10

Washington, 466 U.S. 668 (1984).  See also, United States v. Bavers, 787 F.2d 1022 (6th Cir. 1985).  Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy, Strickland, 466 U.S. at 689.  Accord, Wilson v. Yukins, unreported, 1999 U.S.Dist. LEXIS 7644 (E.D.Mich. 1999).  The prejudice prong of the test may be satisfied by a showing that counsel's error deprived the petitioner of a fundamentally fair trial which resulted in a verdict lacking in reliability.  Kimmelman v. Morrison, 477 U.S. 365 (1986).

The Sixth Amendment right to effective assistance of counsel extends to appellate counsel on direct appeal of a criminal conviction.  Evitts v. Lucey, 469 U.S. 387 (1985).  In this regard, the Sixth Circuit Court of Appeals has held that:

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

McMeans v. Brigano, 228 F.3d 674, 682 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (Citations omitted.).

The failure of appellate counsel to assert claims on appeal cannot rise to the level of denial of a constitutional right unless such failure was so ill-advised as to have caused petitioner to effectively have been without counsel.  Burton v. Renico, 391 F.3d 764, 773 (6th Cir. 2004).  A petitioner asserting appellate counsel's failure to raise unasserted claims will not be able to establish such a showing even if the unasserted claims are deemed not to have been frivolous, if

11

those claims are without merit.  Ibid.  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Smith v. Robbins, 528 U.S. 259, 288 (2000).

Stated differently, a petitioner cannot succeed on a claim of ineffective assistance of appellate counsel by reason of failure to raise a particular assignment of error on appeal, unless there is a reasonable probability that such assignment of error would have succeeded at the time that counsel failed to raise it.  McFarland v. Yukins, 356 F.3d 688, 699-700 (6th Cir. 2004).  When appellate counsel fails to raise a claim lacking in merit, that failure cannot amount to ineffective assistance of appellate counsel.  Willis v. Smith, 351 F.3d 741, 746 (6th Cir. 2003).  In order to be successful on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that but for appellate counsel's deficient performance, there is a reasonable probability that he/she would have prevailed on appeal.  Mapes v. Tate, 388 F.3d 187, 194 (6th Cir. 2004).

In sub-issue I of petitioner's first claim for relief he argues that the representation by his appellate counsel was constitutionally ineffective by reason of counsel's failure to raise the issue of sentencing error.  This argument turns on the underlying assertion that he was improperly sentenced by the trial court when it relied on facts not admitted by him, and not determined by a jury, to enhance his sentence beyond the minimum sentence under the law in violation of the rule of law set out by the United States Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004).

In Blakely, it was held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).  Although the Blakely case limited the authority of the trial judge to impose

sentences in excess of the maximum provided by law, the authority of a sentencing judge to impose a sentence within the prescribed statutory range for a particular offense was not limited in the same way.

The Ohio Supreme Court applied the Apprendi and Blakely decisions to the Ohio sentencing guidelines and held that parts of Ohio's felony sentencing scheme were unconstitutional, including Ohio Revised Code §§ 2929.14(B), 2929.19(B)(2), and 2929.41, which provide for judicial findings of fact in order to rebut presumptions in sentencing terms; §2929.14(C), providing for the imposition of maximum sentences; §2929.14(D)(2)(b), findings for repeat violent offender; §2929.14(D)(3)(b), major drug offenders; §2929.14(E)(4), providing for the imposition of consecutive sentences; and §2953.08 (G), statutory findings for consecutive sentences in the appellate record. State v. Foster, 109 Ohio St.3d 1, 62-67, 83, 845 N.E.2d 470 (2006). The constitutional violation was premised upon the fact that those provisions require judicial findings of fact beyond those either rendered by the jury or admitted to by the defendant. Ibid. Those offending portions of the sentencing code were severed, but trial courts retained full discretion to impose sentences within the statutory range, while no longer being required to make findings of fact or to articulate reasons for imposing maximum or consecutive sentences. Id. at 100.

The Foster case, having been decided on February 27, 2006, was applicable to petitioner's situation even though he was sentenced on March 31, 2005, because his direct appeal was not final until May 24, 2006.

Petitioner's sentences of five years incarceration on each first degree felony conviction, to be served concurrently, fall within the prescribed statutory range of 3, 4, 5, 6, 7, 8, 9, or 10

years, for the offenses of which he was convicted, and were not the maximum sentences to be

imposed thereunder.  In the sentencing judgment entry, the trial court stated in pertinent part:

> On March 23, 2005, defendant's sentencing hearing was held pursuant to Ohio Revised Code section 2929.19.  The assistant prosecuting attorney, Scott G. Salisbury, and defense attorney, L. Ray Jones and Kerry O'Brien, were present, as was defendant who was afforded all rights pursuant to Crim. R. 32.  The Court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code section 2929.11, and has balanced the seriousness and recidivism factors Ohio Revised Code section 2929.12.
>
> The Court finds that the defendant has been convicted of "Rape", a violation of Revised Code section 2907.02(A)(2), a felony of the first degree, subject to a mandatory prison term under division (F) of section 2929.13 of the Ohio Revised Code; and of "Kidnapping", a violation of Revised Code section 2905.01(A)(4), a felony of the first degree.
>
> The Court finds that pursuant to Revised Code section 2929.14(B) that the shortest prison term will demean the seriousness of the defendant's conduct; and the shortest prison term will not adequately protect the public from future crime by the defendant or others.
>
> The Court has considered the presumptions under 2929.13(D) of the Revised Code.  It is therefore ordered that the defendant serve a stated prison term of 5 years in prison for "Rape", of which 5 years is a mandatory prison term pursuant to Revised Code section 2929.13(F); and 5 years in prison for "Kidnapping" to run concurrently with each other.

Ohio Revised Code §§ 2929.11 and 2929.12, referenced in the first paragraph of the

sentencing entry, were found by the Foster court not to have violated Blakely, as they addressed

sentencing factors which were merely advisory and which did not require factfinding.

On the other hand, § 2929.14(B), referenced in the third paragraph of the sentencing entry

as requiring imposition of more than the shortest sentence specified by law, was found by the Ohio

14

Supreme Court in <u>Foster</u> to have violated <u>Blakely</u> due to the fact that it required judicial factfinding in order to increase a prison term above what was authorized by a jury verdict or admitted to by a defendant.  That being so, its application to petitioner's sentence was improper.

The United States Supreme Court has paved the way for such an error, however, to be deemed as harmless, holding in pertinent part:

> We have repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal. Instead, "'most constitutional errors can be harmless.'" *Neder v. United States,* 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Arizona* v. *Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). "'[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" 527 U.S., at 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (quoting *Rose* v. *Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)).  Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal.  In such cases, the error "necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder, supra*, at 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (emphasis omitted).

<u>Washington v. Recuenco</u>, 548 U.S. ___, 126 S.Ct. 2546, 2551 (2006) (Footnotes omitted.)  The Court went on to hold that "Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error[,]" and harmless error analysis may be applied to the claimed error.  <u>Id</u>. at 2553.

The Sixth Circuit Court of Appeals, in a habeas case in which the petitioner raised a claim of ineffective assistance of appellate counsel for failure to challenge the imposition of consecutive sentences without the requisite judicial findings to rebut the presumption of concurrent sentences under the pre-<u>Foster</u> felony sentencing scheme, rejected that petitioner's arguments and upheld the

denial of his petition for writ of habeas corpus.  Minor v. Wilson, Unreported, Case No. 05-3534, 2007 U.S.App. LEXIS 1067 (6th Cir. 2007).  In so doing, the court explained that there had been a dramatic change in Ohio's felony sentencing law in response to the Apprendi and Blakely cases, citing the Foster case, but noted that Mr. Minor could not benefit from those changes in light of the fact that his case was not pending on direct review at the time of the change in law, but that, in any event, the new sentencing scheme would work to his detriment considering that "trial courts [were] now no longer required to make any findings or give any reasons when imposing consecutive sentences."  Id. at p.5, n.1.  That same new felony sentencing scheme would likewise work to the detriment of the petitioner in this case, in that the sentences imposed herein were to be served concurrently, as opposed to consecutively, the sentences were within the statutory limits, and under the post-Foster sentencing rules the trial court is not required to engage in factfinding or to articulate its rationale in order to impose concurrent (or consecutive, for that matter) sentences within the statutory limits.

In Shafer v. Wilson, Unreported, Case No. 1:06CV0648, 2007 U.S.Dist. LEXIS 2007 (N.D.Ohio 2007), Judge Gwin denied relief in habeas corpus to a petitioner who claimed that the consecutive sentences imposed by the trial court violated Blakely, finding that although the pre-Foster felony sentencing scheme did violate Blakely, the error was harmless and "there [was] no reason to believe the Petitioner would receive a more favorable sentence if the court grants his habeas request for relief."

Turning to the present case, petitioner's claim of improper sentencing was not clearly stronger than the issues presented on appeal, particularly since the issues raised by petitioner's counsel challenged the validity of petitioner's conviction at trial, which could have resulted in the

16

reversal of that conviction, whereas a sentencing challenge, even if it had been successful, could have only resulted in a remand for re-sentencing.  Cf., Minor v. Wilson, supra at *14-*15, citing State v. Henry, 37 Ohio App.3d 3, 523 N.E.2d 877, 880 (Ohio Ct. App. 1987) and Ohio Revised Code § 2953.08(G) (1999).

Therefore, this Court concludes that any error in not raising this sentencing issue on appeal did not rise to the level of ineffective assistance of appellate counsel, and that sub-issue I of petitioner's first claim for relief is without merit.

In sub-issue III of petitioner's first claim for relief, he asserts another claim of ineffective assistance of appellate counsel by reason of counsel's failure to argue that trial counsel had been ineffective for failing to object to the prosecuting attorney's having "testified" to the fact that the complaining witness "said no," and having "testified" to the fact that "the complaining witness consistently told the truth."[3]  The challenged comments were made during closing argument.

As regards the failure to object to the prosecuting attorney's reference to the fact that the victim "said no" to having consensual sex with the petitioner, the victim testified to that fact at trial, so that the prosecuting attorney was entitled to summarize the evidence in arguments to the jury.  Byrd v. Collins, 209 F.3d 486, 535 (6th Cir.  2000) (A prosecutor is permitted to make "reasonable inferences from the evidence.")

Petitioner's next claim concerning the alleged ineffectiveness of his appellate counsel is that he should have argued that trial counsel was ineffective in not objecting to the prosecutor's statement in argument that the victim had consistently told the truth, which petitioner asserts

---

[3]The third rationale for this claim for relief was previously found to have been procedurally defaulted.

amounted to prosecutorial misconduct in vouching for the victim's testimony.  In support of that

theory, petitioner cites to the following statement of the prosecuting attorney:

> [MR. SALISBURY] If her purpose is, as [defense counsel] Mr.
> Jones puts forth the theory, that she got caught, I guess by her
> fiance', and that she made up this story, there could have been a
> lot better story, right?  Especially against Mr. Scheck.  I mean, if
> you're going to make something up, she could have made up a lot
> better story than that.  She could have made it a lot worse and she
> could have said that other things happened, but the reason she
> didn't do that is because she told the truth, she consistently told
> the truth.
>
> And I refuse to stand here and call it a "story," because a story
> gives the implication that it is not true.

The controlling rule on the issue of alleged improper conduct by the prosecutor is that in

order to warrant relief in habeas corpus a prosecutor's misconduct must have been such that it "so

infected the trial with unfairness as to make the resulting conviction a denial of due process."

Donnelly v. De Christoforo, 416 U.S. 637, 643 (1974); Caldwell v. Russell, 181 F.3d 731 (6th Cir.

1999).

> On habeas review, the standard to be applied to claims of
> prosecutorial misconduct is whether the conduct was 'so
> egregious so as to render the entire trial fundamentally unfair' .
> . . This court must decide whether the prosecutor's statement
> likely had a bearing on the outcome of the trial in light of the
> strength of the competent proof of guilt.

Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997)(citation omitted).

The Sixth Circuit has applied a two-part analysis to determine whether the conduct of a

prosecutor rises to the level of a due process violation.  United States v. Carter, 236 F.3d 777, 783

(6th Cir.  2001); Boyle v. Million, 201 F.3d 711, 717 (6th Cir.  2001).  It must first be determined

whether the prosecutor's remarks were "improper," an assessment which may turn on whether the prosecutor merely argued "reasonable inferences from the evidence," as is permitted, Byrd v. Collins, supra at 535, as opposed to misstating the evidence, which is not, United States v. Carter, supra at 784.  It follows that a prosecutor is not permitted to argue to the jury any facts which are either prejudicial or not in evidence.  Byrd v. Collins, supra at 535.

In addition, a prosecutor is not permitted to vouch for the credibility of a witness or for the veracity of a witness' testimony.  Hodge v. Hurley, 426 F.3d 368, 378-79 (6th Cir. 2005), citing United States v. Young, 470 U.S. 1, 17-19 (1985); Bates v. Bell, 402 F.3d 635, 646 (6th Cir. 2005); United States v. Carroll, 26 F.3d 1380, 1389 (6th Cir. 1994) and State v. Smith, 14 Ohio St.3d 13, 470 N.E.2d 883, 885 (1984).

If the remarks of the prosecutor have been found to be improper, then this Court must apply the four-factor test set forth in United States v. Carroll, 26 F.3d 1380, 1385 (6th Cir.  1994) to determine "whether the impropriety was flagrant," which in turn amounts to deprivation of constitutional rights.  United States v. Carter, supra at 783.  The four factors to be applied are: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong."  Ibid.

This case is distinguishable from Hodge v. Hurley, supra, wherein prosecutorial misconduct was found by reason of the prosecutor's vouching for the credibility of witnesses, in that the misconduct in Hodge was deemed as "repeated and pervasive," Lundgren v. Mitchell, 440 F.3d 754, 774, n.7 (6th Cir. 2006), and he gave his opinion as to the veracity of a number of

19

witnesses, while at the same time stating that the defendant was "lying." Hodge, supra at 378.  The prosecutor also made derogatory remarks about a number of witnesses as well as arguments premised upon their bad character as regarded matters not pertaining to the charges against the defendant. Ibid.  In the present case, the challenged comment made during closing argument was isolated, and made in the context of the defense argument that the victim had fabricated the rape allegation in an effort to rehabilitate her relationship with her fiance′ after he had allegedly heard that she had engaged in sexual activity with the defendant, despite the absence of evidence supporting that theory.   Furthermore, in this case there was corroborative testimony by Mr. A.J. Samhan, an eyewitness to the rape.

In light of the foregoing analysis indicating that the isolated comment by the prosecuting attorney did not rise to the level of prosecutorial misconduct, the underlying basis of petitioner's claim of ineffective assistance of appellate counsel is flawed.  It follows that this Court cannot say that but for appellate counsel's deficient performance, there is a reasonable probability that petitioner would have prevailed on appeal and, therefore, this claim for relief must fail.

Petitioner's remaining claim for relief is that the prosecution deprived him of his constitutional rights when, by instruction of the police, hospital personnel discarded a urine sample which had been obtained from the victim two days after the rape.   He claims that he was denied the right to have the urine sample tested further in an attempt to impeach the victim's testimony that she was unconscious during the sexual acts, by showing that the victim had been under the influence of substances other than alcohol, cocaine, or Zoloft  (all of which she had admitted to hospital personnel that she had ingested), which substances would have prevented her from "blacking out."

The state appellate court rejected petitioner's argument on this issue, holding in pertinent part:

> As Appellant's second and sixth assignments of error are interrelated, this Court will address them together.  In his second assignment of error, Appellant contends that the State committed prosecutorial misconduct when it authorized the destruction of crucial evidence prior to trial.  In Appellant's sixth assignment of error, he contends that the State also committed prosecutorial misconduct when it referred to Appellant as a "rapist" during trial.  We find no merit in these contentions.
>
> In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, an appellate court determines if the prosecutor's actions were improper, and, if so, whether the substantial rights of the defendant were actually prejudiced.  *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883.  The defendant must show that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different.  *State v. Loza* (1994), 71 Ohio St.3d 61, 78-79, 1994 Ohio 409, 641 N.E.2d 1082.
>
> * * * * *
>
> However, Appellant did not object to the prosecutor's alleged misconduct during his closing argument.  As such, Appellant has waived a review except under the plain error standard regarding these comments.  *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916; *State v. Smith*, 9th Dist. Nos. 01CA0039 and 01CA0055, 2002 Ohio 4402, at P103, citing *State v. Twyford* (2002), 94 Ohio St.3d 340, 2002 Ohio 894, 763 N.E.2d 122.  Furthermore, "it is well-established that a prosecutor has wide latitude during closing argument to present his or her most convincing position based on the evidence presented at trial."  *Smith*, supra, at P103, citing *State v. Phillips* (1995), 74 Ohio St.3d 72, 90, 1995 Ohio 171, 656 N.E.2d 643.  As Appellant has not asserted that the trial court committed plain error, we decline to address it.
>
> In addition, although Appellant elicited testimony regarding the

21

disposal of T.D.'s urine sample, the record reflects that he failed to raise an objection regarding the alleged prosecutorial misconduct.

Respondent asserts that this claim for relief was procedurally defaulted in state court in light of the finding of the state appellate court on direct appeal that petitioner failed to raise contemporaneous objections to this claim at trial. Despite having so found, the appellate court also reviewed the merits of this claim for relief and held that no error had been committed by the prosecutor as regarded the urine sample.

As it is the task of this federal court to only consider in habeas corpus claims which were adjudicated on the merits in the state courts it generally will not address claims which were not substantively analyzed by the state courts, either due to failure to raise them before the state courts while a remedy was available or due to a state procedural rule precluding merits review of such claim. Claims which fall into that category are deemed procedurally defaulted, and may not be considered on federal habeas review. Lancaster v. Adams, 324 F.3d 423, 436 (6th Cir. 2003), citing Seymour v. Walker, 224 F.3d 542, 549-50 (6th Cir. 2000).

The Sixth Circuit Court of Appeals has delineated a four-part test for determining whether a habeas petitioner's claim is procedurally defaulted by the failure to observe a state procedural rule. First, the district court must determine whether there exists a state procedural rule with which the petitioner failed to comply. Then the court must determine whether the state court enforced the sanction for failure to comply. If so, it must next be decided whether failure to comply with the state procedural rule constitutes an adequate and independent ground for barring review of the federal constitutional claim. If all these questions are answered in the affirmative, the petitioner must satisfy the requirements set forth in Wainwright v. Sykes, 433 U.S. 72, 138 (1977) that he

22

demonstrate cause for having failed to follow the procedural rule in question and that he was actually prejudiced by the alleged constitutional error. Greer v. Mitchell, 264 F.3d 663, 672-73 (6th Cir. 2001), cert. denied, 535 U.S. 940 (2002); Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986). Accord, Lancaster v. Adams, supra at 436.

Applying the four-part analysis to the foregoing, the petitioner failed to comply with Ohio's contemporaneous objection rule[4] and no plain error was found. Ohio courts enforce the contemporaneous objection rule and to the extent that the state appellate court did so, that was an adequate and independent ground on which the court could rely to preclude merits consideration of these claims. Consequently, petitioner could be required to show cause for the procedural error and actual prejudice to his case, which he has not done.

Procedural default aside, petitioner's second claim for relief fails on the merits.

This claim for relief is essentially an allegation of improper conduct of the prosecution by reason of the suppression of evidence, which calls into question the rule of law of Brady v. Maryland, 373 U.S. 83, 87 (1963), which obligates the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998). Suppression of such evidence by the prosecution upon request violates due process irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. at 87. This duty exists on the part of the prosecution whether or not the evidence is requested by the defense. Strickler v. Greene, 527 U.S. 263 (1999).

"Evidence is material only if there is a reasonable probability that, had the evidence been

---

[4]That rule can be found in State v. Campbell, 69 Ohio St.3d 38, 630 N.E.2d 339 (1994).

23

disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).  The materiality requirement was clarified in Kyles v. Whitley, 514 U.S. 419, 434 (1995), wherein the court held in pertinent part:

> *Bagley's* touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important.  The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

Thus, in a successful Brady claim, "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, supra at 281-282.  It follows, that the Brady rule does not apply where the evidence is available to the defense from sources other than the state and the defense is aware of the facts necessary to lead to that evidence. Spirko v. Mitchell, 368 F.3d 603 (6th Cir. 2004).

In a habeas corpus context, application of the foregoing is altered by the requirement that this Court defer to the findings of the state courts on petitioner's claims of prosecutorial misconduct. Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003), citing Macias v. Makowski, 291 F.3d 447, 453-54 (6th Cir. 2002) ("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights.  But this case is before us on a petition for a writ of habeas corpus.  So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of

clearly established federal law.")  Habeas relief may only be granted on this claim if the state court's decision that the conduct of the prosecuting attorney was not unconstitutional constituted an unreasonable application of clearly established federal law.

The state appellate court applied the rule of <u>Brady</u>, without citing the case, when it held in pertinent part:

> Even had Appellant objected to the disposal of this sample, he has failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different had he been able to test the urine sample.  First and foremost, Appellant has failed to demonstrate that the prosecutor's actions amounted to misconduct.  After all, the urine sample was taken forty-eight hours after the assault and thus, as Appellant's expert testified, the sample would not have revealed the amount of alcohol T.D. had consumed.  In addition, during both the nurses' examination and at trial, T.D. readily admitted that she had ingested a mixture of cocaine and alcohol on the evening in question.  In light of T.D.'s admission that she ingested cocaine and alcohol on July 27, 204, we find that Appellant has failed to demonstrate (1) the relevance of the sample and (2) that he suffered any prejudice as a result of his inability to analyze the urine sample.

This Court is of the opinion that the foregoing state appellate court rulings that the conduct of the prosecution was not improper and failed to rise to the level of a constitutional violation, did not constitute an unreasonable application of clearly established federal law.  That is particularly true in this case where there is nothing to show that the urine sample taken 48 hours after the rape would have revealed pertinent information.   It follows that petitioner's second claim for relief is without merit.

In light of all the foregoing, it is recommended that the petition be dismissed without further proceedings.

25

s/DAVID S. PERELMAN
United States Magistrate Judge


DATE:   May 1, 2007



**OBJECTIONS**


Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).